[No. C. D. 2507. *En Banc.* July 10, 1939.]

*In the Matter of the Proceedings for the Disbarment of* A. EMERSON CROSS, *an Attorney at Law.*[1]

[1]Reported in 92 P. (2d) 243.

*S. M. Brackett,* for the board of governors.

*W. J. Murphy* and *A. Emerson Cross,* for respondent.

BEALS, J.—Two complaints against A. Emerson Cross, who was admitted to the bar of this state September 11, 1906, having been filed with the board of governors of the Washington state bar association, the matter was referred to a trial committee, which conducted an extensive hearing and, after the close thereof, recommended to the board that Mr. Cross be required to attend before the board and be admonished and also advised that, unless within six months thereafter he should reimburse each of the two complainants, the board would recommend that he be suspended from the practice of law for the period of one year. The committee further recommended that, in the event Mr. Cross should reimburse the two complainants, the proceeding against him should remain pending; and that, if other complaints against him should be established, the entire record be transmitted to this court, together with recommendations for appropriate action.

The board of governors, after reviewing the record, approved and adopted the findings of the trial committee, but disagreed with the committee as to its recommendation. The board directed that the proceedings be reported to this court, together with the board's recommendation that Mr. Cross be suspended from the practice of law for the period of one year, and thereafter until such time as he should make restitution.

The record in the proceeding was accordingly forwarded to this court, and, after due notice to respondent Cross, the matter was heard before the court sitting *En Banc.*

In the first complaint, it was alleged that, during the month of September, 1935, respondent induced one Anton Szutko to transfer to him shares, or certificates, in a building and loan association, having then a market value of approximately $1,500, and to lend to respondent the value thereof; it being alleged that respondent then represented to Szutko that respondent held warehouse receipts for ten (later amended to read eighteen) barrels of whiskey, and that he would, within ten days, assign these receipts to Szutko as security; that respondent did deliver to Szutko an undertaking in writing, whereby respondent promised to pay to the order of Szutko

"October 1st, 1936 the sum of $2025.25, or on
"October 1st, 1937  "    "    "   2715.50,  "   "
"October 1st, 1938  "    "    "   4050.75,  "   "
"October 1st, 1939  "    "    "   5404.00, with interest at 10% per annum after date of maturity until paid.

"The owner and holder of this note, at his option, may demand payment of this note on any of the above dates of the amount due thereon, by giving the maker 30 days prior written notice of his election to demand payment on such date."

The agreement further provided that, as collateral security for the payments above referred to, respondent agreed to assign to, and deposit with, Szutko, within ten days, warehouse receipts covering ten barrels of Kentucky bourbon whiskey stored in a government bonded warehouse. The agreement contained other provisions which need not be referred to.

It was further alleged in the complaint that respondent failed to deliver to Szutko any warehouse receipts, and failed to repay to Szutko the money which respondent received from him.

In the second complaint, it was alleged that, during the month of February, 1936, respondent represented to one Mercedes Pittman that certain shares of pre-

ferred stock of Puget Sound Power & Light Company which she owned were a poor investment, with the result that Mercedes Pittman assigned her stock to respondent, he agreeing that he would sell the stock and invest the proceeds, on her account, in warehouse receipts for ten barrels of whiskey and one hundred shares of Superior Oil & Gas Company stock, of the par value of one dollar each; and that, notwithstanding repeated demands on the part of Mercedes Pittman, respondent Cross failed and refused to deliver to her any warehouse receipts or shares of stock, or to return her money.

Respondent answered the complaint, admitting the facts pleaded in the first count, save that he denied

"That as an inducement to said loan, respondent Cross represented that he held warehouse receipts for ten barrels of whiskey,"

and further denied

"That the said Anton Szutko, in agreeing to make the said loan upon the security of said warehouse receipts, was induced to do so by reason of the reputation of respondent Cross as an attorney, licensed to practice law in the state of Washington."

Respondent further alleged in his answer that, after the transaction between himself and Szutko was entered into, and after he had purchased the warehouse receipts, Szutko, through an attorney, gave respondent notice that he rescinded the transaction, and thereafter sued respondent in the superior court to recover the value of the savings and loan stock; and that this action was still pending at the time respondent answered the complaint herein, on the 17th day of November, 1938. Respondent further alleged that he intends to pay to Szutko the amount due under respondent's written agreement above referred to, and that he entered into

the agreement with Szutko in good faith and with intent to perform the same.

Answering the second complaint, respondent admitted the facts pleaded therein, save that he denied that Mercedes Pittman was induced to enter into the agreement with respondent by reason of the latter's reputation as an attorney, or because respondent was licensed to practice law in the state of Washington.

Further answering the second complaint, respondent pleaded that the delivery to Mercedes Pittman of the warehouse receipts and oil stock had been delayed pending the settlement of differences between Mercedes Pittman and himself; that he was at all times willing to return the shares of stock which she had turned over to him, or the highest market value thereof since he had received the stock. He further alleged that he owned accounts receivable far in excess of his liability to Mercedes Pittman, and was willing to satisfy her in full out of the proceeds thereof.

An extensive hearing was had before the trial committee, which made full and complete findings of fact. The committee found that Anton Szutko is of foreign birth, and speaks English imperfectly; that he is a laborer, and had invested his savings, in the sum of five thousand dollars, in certain certificates which, on September 30, 1935, had a market value of $1,513; that respondent, having learned that Szutko was the owner of the certificates, solicited a loan, and when this was refused, persuaded Szutko to assign and deliver to respondent his certificates in return for the written agreement above referred to; that, upon receiving Szutko's certificates, respondent immediately sold the same for $1,513; that Szutko endeavored to rescind the transaction, or in the alternative, to obtain possession of the warehouse receipts for whiskey, referred to in the contract between himself and respondent; that respondent

from time to time agreed to deliver the warehouse receipts, but failed to do so; that he never acted as attorney for Szutko, and had no acquaintance with him, except as above mentioned; that respondent asserted at the hearing before the trial committee that he had ordered and obligated himself to purchase the warehouse receipts for eighteen barrels of bonded whiskey; and that, upon receiving the certificates, he sent a friend to Aberdeen to offer to Szutko the warehouse receipts he had promised, but that the friend reported to respondent that Mr. Szutko had refused to accept delivery of the warehouse receipts.

Respondent then asserted that, in order to raise funds, he then pledged the warehouse receipts to one Harold C. Russell, as security for a loan of $250, and that upon endeavoring to redeem the receipts from Russell, was informed by the latter that he in turn had pledged the warehouse receipts to another, and therefore could not return them to respondent. The committee further found that, although respondent admitted that he was well acquainted with Russell, he was unable to inform the committee for what amount Russell had pledged the receipts, upon what terms, or with whom; and that respondent further stated that he made no particular effort to contact Russell until January, 1939, when he made a trip to Seattle for that purpose, but was unable to find him.

Concerning the second complaint, the trial committee found that Mercedes Pittman and her husband are persons inexperienced in financial or investment matters; that the husband is a porter in a small barber shop in a hotel in the city of Tacoma, and, meeting respondent, who was a guest at the hotel, consulted with respondent as to the value of the preferred stock of Puget Sound Power & Light Company; that respondent in-

formed Mr. Pittman that the stock was a poor invest-
ment, and that the same should be sold and warehouse
receipts covering whiskey in storage purchased with
the proceeds thereof; that respondent called on the
Pittmans at their place of residence and induced them
to assign and deliver to him their stock in return for
his agreement to sell the same and invest the proceeds
as hereinabove set forth; that, notwithstanding many
demands upon him by the Pittmans, respondent wholly
failed to deliver to them any warehouse receipts or
shares of stock.

Respondent, having been notified by the bar associa-
tion of the filing by Szutko of a complaint against him,
failed to make any explanation of his conduct, where-
upon this proceeding was instituted.

The committee further found that respondent recog-
nized his obligation to refund to complainants the value
of the securities received by him.

Respondent contended before the trial committee
and contends here that the record shows no more than
transactions involving breach of contract.  Respondent
is an attorney of over twenty-five years experience;
he persuaded ignorant people to intrust him with their
savings and grossly abused the confidence reposed in
him.

His contract with Anton Szutko is fantastic, and it
cannot reasonably be argued that it was entered into in
good faith.  Respondent contended that he purchased
warehouse receipts for eighteen barrels of whiskey and
pledged them to Russell as security for a personal loan
in the sum of $250, but when later Russell stated to him
that he had in turn repledged the warehouse receipts,
respondent does not contend that he made any attempt
to ascertain the name of Russell's pledgee or the
amount for which they were in pawn, or that he took

any steps to obtain possession of the receipts, save to ask Russell for them. Apparently, it is respondent's position that, because Szutko notified him that he had rescinded the contract, this relieved respondent of all responsibility, save to await the result of the rescission action, in the meantime regarding the warehouse certificates as his own property.

Respondent's acts and his attempted explanations show a complete disregard of the principles of honest dealing between man and man, and a lack of appreciation of the standards of conduct required of a member of the bar.

As to the transaction with Mercedes Pittman, respondent admits receiving the money from the sale of her stock and agreeing to deliver to her warehouse receipts for ten barrels of whiskey and one hundred shares of stock, and that he never complied with his contract and delivered to her that which he had promised to deliver. Apparently, his contention is that, when he demanded the warehouse receipts from Russell and tendered the comparatively small sum of $250 which he stated he owed Russell, he was perfectly content to accept the latter's statement that the warehouse receipts could not be delivered to respondent because they were in pawn and out of Russell's possession. Respondent offers no explanation as to why he did not return to Mrs. Pittman the money he had received for her stock. He wrote her a letter explaining in considerable length his failure to deliver the oil stock, but did not refer to the warehouse receipts. Respondent's treatment of Mrs. Pittman is most reprehensible.

Respondent suggests that, during the rather lengthy period during which these transactions took place, he was mentally disturbed; but, accepting his statements at their face value, it cannot be held that he is not responsible for his acts.

Rule XI, of the Rules for Discipline of Attorneys, 193 Wash. 92-a, enumerates the grounds for reprimand, suspension, or disbarment, and provides that "an attorney or counselor may be reprimanded, suspended or disbarred for any of the following causes: . . . " Paragraph (6) reads as follows:

"For the commission of any act involving moral turpitude, dishonesty, or corruption, whether the same be committed in the course of his relations as an attorney or counselor at law, or otherwise, and whether the same constitute a felony or misdemeanor or not; and if the act constitute a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disbarment or suspension from practice therefor."

Beyond question, respondent's conduct renders him subject to discipline, under the rules.

The authority of the bar association to investigate, and, upon proper complaint, proceed by means of a trial committee, and the power of this court to discipline, are not to be considered as a mere threat in order to enforce restitution by a member of the bar. The purpose of the rule is the enforcement and maintenance of proper discipline.

We are of the opinion that, in the case at bar, the recommendation of the board of governors should be adopted. It is accordingly ordered that respondent, A. Emerson Cross, be suspended from the practice of law for the period of one year, and that this suspension shall continue in effect after the expiration of that period, if respondent has not made restitution to Anton Szutko and Mercedes Pittman prior to the expiration of the term of suspension hereby imposed, and until such restitution be made. The term of suspension hereby imposed shall become effective sixty days after the filing of this opinion, or after the denial of any

petition for rehearing herein, should such a petition be filed.

BLAKE, C. J., MAIN, ROBINSON, SIMPSON, JEFFERS, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—The suspension should be "until further order of this court."

STEINERT, J. (dissenting)—I am of the opinion that in such a proceeding, and upon the record herein, this court should enter an order of suspension for one year and until the further order of the court.

